UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-cv-02043 WBS AC |
|---|---|
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| APPROXIMATELY $28,360 IN U.S. CURRENCY, | |
| Defendant. | |

Before the court is plaintiff United States of America's March 3, 2021 motion for default judgment against the interest of Christopher Antonio Reyes ("Reyes") to Defendant $28,360.00 in U.S. currency ("Defendant Currency"). On review of the motion and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

I.  FACTUAL ALLEGATIONS

This is a civil action in rem brought by the United States for forfeiture of the defendant funds, which were seized from Reyes at Sacramento International Airport in Sacramento, California on October 24, 2019.  Compl. ¶ 2.  On that day, law enforcement received information regarding potentially suspicious travel by Reyes.  During a layover in Phoenix, Arizona, law enforcement personnel spoke to Reyes and he consented to a search of his carry-on bag and checked baggage.  Id. ¶ 5.  A search of Reyes' carry-on luggage revealed $5,000 in cash.  Id.

1

However, Phoenix law enforcement were unable to locate Reyes' checked baggage before his flight left for Sacramento and therefore did not complete the search of Reyes' luggage. Id. A law enforcement review of Reyes' criminal history revealed numerous arrests for drug related offenses, including a recent arrest for narcotics trafficking by Oklahoma law enforcement. Specifically, in June 2018, the Oklahoma Bureau of Narcotics arrested Reyes after discovering over 100 pounds of processed marijuana in his vehicle. Reyes has since pleaded guilty to drug charges in Oklahoma. Id. ¶ 6. After being contacted by Phoenix law enforcement, law enforcement agents in Sacramento responded to the Sacramento International Airport to speak with Reyes and complete the consensual search of his checked baggage. Id. ¶ 7. When law enforcement arrived at the airport, they learned Reyes had missed his connecting flight, but his baggage had arrived at the airport on his original flight. Id. Pursuant to the Reyes' consent in Phoenix, law enforcement retrieved Reyes' checked bag from the carousel and took it to a private room to complete their search. Id. Upon opening the bag, law enforcement found items of clothing, a notebook, a folder, and a plastic pencil case. Hidden within the notebook, folder, and pencil case, law enforcement found numerous stacks of $20 bills. Id.

After discovering the bundles of cash in Reyes' checked baggage, law enforcement proceeded to speak with Reyes, who had arrived on a later flight out of Phoenix after missing his original flight. Id. ¶ 8. Law enforcement met Reyes in the airport terminal and identified themselves as law enforcement. Law enforcement told Reyes they had been contacted by law enforcement in Phoenix regarding cash in Reyes' carry-on bag. Reyes opened his bag and showed law enforcement the cash, and they asked Reyes if he had checked any bags. Id. Reyes said "yes"—and law enforcement asked Reyes how much cash was stored his checked bags. Reyes told law enforcement there was no additional cash in his checked baggage. Id. Law enforcement asked Reyes to accompany them to the private room to continue the conversation. Id. ¶ 9. Reyes agreed and upon entering the private room, Reyes could see the approximately $23,000 of cash found in his checked bag. Id. Law Enforcement asked Reyes if the checked baggage containing the cash was his and if he packed the item. Reyes replied "yes" to both questions. Id. Law Enforcement asked if the cash taken from the checked baggage belong to

Reyes, and he stated he knew nothing about the cash, and it did not belong to him. Id. Law Enforcement then asked Reyes if he knew how the cash got into the bag and he replied he had no idea. Id. Law Enforcement also asked if Reyes if he had a criminal history—to which Reyes responded that he had a prior arrest for "weed" possession. Id. Law enforcement presented the cash seized from Reyes' luggage to a dog trained to detect the odor of narcotics.

The drug detection dog positively alerted to the presence of the odor of narcotics on the cash seized from Reyes. A later bank count of the cash seized from Reyes' luggage totaled $28,360.00. Id. ¶ 10. North Carolina Department of Commerce, Employment Security records revealed that Reyes worked at Alfredo's Pizza Villa, Jerome Enterprises LLC, and Whole Foods Market with very minimal legitimate income between 2017 and 2019. Id. ¶ 11. Reyes had no reportable employment since the second quarter of 2019. Id. Reyes has significant drug-related criminal history, including arrests for possession with intent to distribute a controlled substance in 2014, possession with intent to distribute marijuana in 2015 and 2018, and possession of marijuana in 2019. Id. ¶ 12.

## II.   PROCEDURAL BACKGROUND

On October 13, 2020, plaintiff filed a complaint for forfeiture in rem against the defendant currency. On November 24, 2020, plaintiff attempted personal service on Reyes at 4301 Lost Forest Way, Raleigh, North Carolina, of a packet with copies of the complaint, application and order for publication, warrant for arrest, order setting status (pretrial scheduling) conference, standing order, and court notices. See ECF No. 9. The individual at the residence informed the process server that Reyes was incarcerated. See id. Mr. Reyes was successfully personally served at Alamance County Jail on January 27, 2021. ECF No. 14.

On October 16, 2020, the undersigned authorized publication of the forfeiture action via the internet forfeiture website (www.forfeiture.gov) for at least thirty days. ECF No. 4. According to plaintiff's Declaration of Publication (ECF No. 7), a Notice of Civil Forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty days beginning on October 23, 2020. To date, no claim or answer has been filed on behalf of Reyes.

////

On January 25, 2021, the Clerk entered default against the interests of Reyes. ECF No. 13. Now pending is plaintiff's March 3, 2021 motion for default judgment. No opposition to the motion has been filed. The matter was taken under submission. ECF No. 16.

### III.     LEGAL STANDARD

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where (1) the defendant has been served with the claim; (2) the defendant's default has been entered for failure to appear; (3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and, (4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry of a default judgment and as to setting aside a default include the nature and extent of the delay, Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); the possibility of prejudice to the plaintiff, Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); the merits of plaintiff's substantive claim, id.; the sufficiency of the allegations in the complaint to support judgment, Alan Neuman Productions, Inc., 862 F.2d at 1392; the amount in controversy, Eitel v. McCool, 782 F.2d at 1471-72; the possibility of a dispute concerning material facts, id.; whether the default was due to excusable neglect, id.; and, the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id.

With respect to default judgments in proceedings that are in rem actions for forfeiture, both the general Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supp. R.") apply, but the latter rules prevail if there is an inconsistency. Supp. R. A(1). Supplemental Rule G(1) provides that the rule governs a forfeiture action in rem arising from a federal statute; to the extent that Rule G does not address an issue, Supplemental Rules C and E also apply. Supplemental Rule G, which took effect on December 1, 2006, incorporates a common-sense approach to notice grounded in defined and recognized

principles of due process of law.  Supp. Rule G, Adv. Comm. Note on 2006 Adoption.  The Advisory Committee Note indicates that the rule was added to bring together the central procedures governing civil forfeiture actions; it also states that the rule generally applies to actions governed by the Civil Asset Forfeiture Reform Act of 2000 (CA FRA) as well as those excluded from it; thus, the intended scope of application is very broad.  The rule permits flexibility as to the time of service of any warrant and supplemental process.  Id.  The provisions for notice incorporate the traditional means of publication and adopt the general principle that notice should be effectuated by means reasonably calculated to reach potential claimants at a cost reasonable in the circumstances, and actual notice precludes a challenge to the government's failure to comply with the specific requirements of the rule set forth in Rule G(4)(b).  Id.

## IV.   ANALYSIS

### A.  Judgment Sought

The court concludes that the notice given of the judgment sought satisfies Federal Rules of Civil Procedure 55(d) and 54(c), which require that a judgment by default shall not be different in kind from the relief sought, or exceed in amount that prayed for, in the demand for judgment.  In this regard, plaintiff expressly sought in the complaint the types of relief sought by the instant application for default judgment, including a judgment of forfeiture of the defendant funds to the plaintiff United States.

### B.  Default and Entry of Default

The declarations and the court's own docket demonstrate that no person or entity made a claim or answered the complaint within the requisite thirty-day period for filing a claim under 18 U.S.C. § 983(a) (4)(A) and Supp. R. G(5), and/or within the twenty-one-day period set forth in Supp. R. G(5) for filing an answer thereafter.  The court notes that at the time the Clerk entered default against Reyes on January 25, 2021, a certificate of service showing successful service on Reyes had not been filed.  Reyes was, however, personally served and the certificate filed shortly thereafter.  As more than 30 days has passed since service of process and entry of default, and Reyes has still not appeared, to the extent that entry of default was premature the error is harmless.

C. Notice

The Declaration of Publication by plaintiff filed on November 24, 2020 establishes that a notice with the contents required by Supp. R. G(4)(a) was published on the official government internet site for thirty consecutive days as required by Supp. R. G(4)(a)(iv)(c).

As to the potential claimant, the return of service establishes that he was personally served with the pertinent documents as set forth above. Therefore, the notice complied with the requirements of Supp. R. G(4)(b).

The undersigned concludes that plaintiff has demonstrated that it has given notice by publication as well as the notice required to be given to potential claimants by Rule G(4).

D. Legal Sufficiency of the Complaint

1. Legal Standard

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim. Alan Neuman Productions, Inc., 862 F.2d at 1392. Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

Under the CA FRA, which applies to this case, the government must prove by a preponderance of evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Further, if the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the government must establish that there was a substantial connection between the property and the offense. 18 U.S.C. § 983(c)(3).

Supplemental Rules for Certain Admiralty and Maritime Claims Rule G(2) requires that the complaint in a forfeiture action in rem arising from a federal statute be: verified; state the grounds for subject-matter jurisdiction and in rem jurisdiction over the defendant property as well as venue; describe the property with reasonable particularity; identify the statute under which the

forfeiture action is brought; and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

  2. The Complaint

The complaint filed in this action was verified.  Compl. 5.

The bases for jurisdiction are identified as 28 U.S.C. §§ 1345 and 1355(a) (jurisdiction of civil proceedings commenced by the United States or an agency or officer thereof, and of actions to recover or enforce penalties or forfeitures under acts of Congress, respectively).  Compl. 1-2.

The bases of venue are identified as 28 U.S.C. §§ 1355 (placing venue for a civil forfeiture action where the acts giving rise to the forfeiture occurred) and 1395 (placing venue for a civil forfeiture proceeding where the property is found).  Compl. 2.

The property is described in the complaint with reasonable particularity.

It is stated that plaintiff proceeds pursuant to 21 U.S.C. § 881(a)(6), and that the defendant funds constitute money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. § 841 *et seq.*  Compl. 4.

In the complaint there are alleged sufficiently detailed facts to support a reasonable belief that the government would be able to meet its burden of proof at trial.  The complaint details regarding potentially suspicious travel by Reyes, and during a layover in Phoenix, Arizona, law enforcement spoke to Reyes and he consented to a law enforcement search of his carry-on bag and checked baggage.  Law enforcement in Phoenix found $5,000 in his carry-on, and law enforcement in Sacramento found numerous stacks of $20 bills in his checked baggage.  A drug detection dog positively alerted to the presence of the odor of narcotics on the cash seized from Reyes. A later bank count of the cash seized from Reyes' luggage totaled $28,360.00.

These facts support a reasonable inference that the defendant currency was subject to forfeiture as money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. § 841 *et seq.*.  The totality of the

////

circumstances reflects that a substantial connection between the defendant funds and a violation of these statutes.

### E. Status of Potential Claimants and Discretionary Factors

Here, no one has claimed an interest in the defendant funds or otherwise responded to the complaint despite being provided adequate notice of these proceedings. It does not appear that there is any risk of mistake or excusable neglect on the part of anyone with a potential interest in the property or of a dispute as to a material fact essential to the government's case. No just cause for delay appears. There does not appear to be any reason why the general policy in favor of a decision on the merits would warrant refusing to enter the requested default judgment.

Based thereon, the court finds that plaintiff has shown its entitlement to a default judgment of forfeiture.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The United States' motion for default judgment and final judgment of forfeiture (ECF No. 15) be granted;
2. That judgment by default be entered against any right, title, or interests of Reyes in the defendant funds referenced herein;
3. That a final judgment be entered, forfeiting all right, title, and interest in the defendant funds to the United States, to be disposed of according to law.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

////
////
////
////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 5, 2021

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE